GEORGE F. BURR ET AL. V. REDHEAD, NORTON, LATHROP COMPANY.

FILED NOVEMBER 18, 1897.  No. 7519.

1. **Sales: WARRANTY.** During the course of a sale of personal property the vendor made statements in letters relative to the qualities and conditions of the property which were positive affirmations of facts and not mere opinions, and which were accepted and relied upon by the vendee in making the contract of purchase of the property. *Held,* To constitute a warranty.

2. ——: ——: BREACH: DAMAGES. All damages in contemplation of the parties to the contract, or which naturally may result from a breach of a warranty, accrue in favor of the party injured by such breach.

3. ——: ——: ——: ——. What are sometimes denominated "consequential damages" may be recoverable in an action for a breach of a warranty, if they are certain and determinate in nature or amount, or can be rendered so by evidence, and are also directly attributable to the breach of the contract as their cause.

4. ——: ——: CATALOGUE AND PRICE-LIST: EVIDENCE. The admission of certain evidence examined and *held* erroneous.

ERROR from the district court of York county. Tried below before BATES, J. *Reversed.*

*Sedgwick & Power,* for plaintiffs in error.

*Coffin & Stone* and *Merton Meeker, contra.*

HARRISON, J.

This action was instituted in the county court of York county by the defendant in error, hereinafter designated the "company," to recover an amount alleged to be its due from the plaintiffs in error on account of a number of bicycles sold by the company to plaintiffs in error. The balance claimed to be due on the account after the deduction of a payment of $100, was $443.75. The case was in the course of the litigation appealed to the district court of York county, where, in the petition filed, the claim was set forth of the amount due on the account as we have just stated it. The answer admitted the purchase of the bicycles and asserted that there was an overcharge in the account of $41.75; and it was further pleaded therein as follows:

"And these defendants further allege that prior to, and at the time of, the purchase of the said bicycles, and as a part of the contract of purchase thereof, and as an inducement to enter into said contract, the plaintiff represented and warranted said property to be well and properly made, and of good materials, and to be of the highest possible grade, and that the said bicycles would give the purchasers thereof every satisfaction; and these defendants, relying upon the said warranty, purchased the said bicycles, which otherwise they would not have done. Defendants say that said bicycles were not well and properly made, and were not of good materials and of the highest possible grade, but, on the other hand, were of poor workmanship and made of poor material, and were of poor grade and inferior machines. And these defendants sold several of said machines to different parties and the same did not give the purchasers satisfaction, but failed in their construction and materials and other respects, as above stated, and were not of greater value than $150.

"4. And at the time of entering into said contract, these defendants were engaged in the implement business, and were dealing in bicycles at York, Nebraska, and had a

large business and patronage in said business, and by reason of the failure of the said bicycles, as represented and warranted, these defendants were compelled to purchase and make repairs to said bicycles to the amount of $35, and were compelled to, and did, lose a large amount of time of themselves and their employes in their attempting to repair said bicycles and make them work as warranted, to the amount and value of at least $100, and were compelled to, and did, pay a large amount of express charges, to the amount of $15, and were greatly injured and damaged in their said business by reason of the said failures of the said bicycles as warranted.

"5. The defendants sold said bicycles to various of their customers, and the same failed and were not good machines, and the said customers refused to keep the same but returned them and refused to pay therefor, and the customers and patrons of said defendants learning of the said failure of the said machines, refused to purchase bicycles of the said defendants so that defendants lost sales of bicycles which they otherwise would have made, to the amount and value of at least $500, and the commissions lost the defendants on such sales were at least of the value of $100, so that these defendants had been damaged in the premises in the sum of $250."

For the company there were interposed motions that the allegations of damages claimed to have accrued in favor of plaintiffs in error in the sum of $35, by reason of their being compelled to purchase repairs for, and to repair, the bicycles bought of the company, the one in which the claim in the sum of $100 was made for loss of time of plaintiffs in error and their employes in repairing the bicycles and trying to make them as warranted, also the averment of damages to the amount of $15 express, and other charges, and the further claim for $100 loss of profits on sales of machines returned to plaintiffs in error by purchasers because unsatisfactory and defective, and not as warranted, should all be stricken out of the answer. The grounds of these motions were that the allegations

attacked were not of proper elements of damages; also that they raised issues which were not of those tried in the county court. The motions were sustained. A reply was filed, and in a trial of the issues before the court and a jury the company received a verdict in the sum of $——, on which judgment was rendered. The unsuccessful parties have prosecuted error to this court.

The first question to be settled is whether the company made any warranty of the machines sold to plaintiffs in error. The warranty of the property sold, if any was shown, consisted of statements in letters written by, or for, the company and forwarded to plaintiffs in error in the course of the correspondence between the parties which resulted in the purchases by plaintiffs in error. These particular letters were written at or about the time of the purchases and in their terms may be said to have been parts of the contract of sale. We think, under a fair construction of these letters, it may be stated that they contained positive affirmations of the qualities and conditions of the bicycles, as facts, and not as mere opinions, which if accepted and relied upon by the plaintiffs in error in making the purchases, were sufficient to constitute a warranty.

Other points to be discussed relate to the action of the trial court in sustaining the motions to strike from the answer certain portions thereof with reference to elements of damages, and to which we have hereinbefore specifically called attention. With this may be considered the assignments of error in regard to the exclusion of evidence offered for plaintiffs in error on each branch of the subject of damages included in the parts of the answer which were stricken out. Of the rule of damages, speaking generally, it may be stated as in *Hadley v. Baxendale*, 9 Exch. [Eng.], 341: "Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either arising naturally,—*i. e.,* ac-

cording to the usual course of things,—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." The substance of this statement has been adopted as the rule in this state. (See *Sycamore Marsh Harvester Mfg. Co. v. Sturm*, 13 Neb., 210; *Aultman v. Stout*, 15 Neb., 586; *Deering v. Miller*, 33 Neb., 654; *Omaha Coal, Coke & Lime Co. v. Fay*, 37 Neb., 68.) To afford damages which will compensate the party aggrieved by the breach of the contract is the intent of the law. "The damages recoverable for a breach of warranty * * * include all damages which, in contemplation of the parties, or according to the natural or usual course of things, may result from the wrongful act." (*Dushane v. Benedict*, 7 Sup. Ct. Rep., 696.) Under this general rule, ordinarily the measure of damages is the difference between the actual value of the article and its value if it had been as warranted. (28 Am. & Eng. Ency. of Law, 837; *Young v. Filley*, 19 Neb., 545.)

The plaintiffs in error were in business in York, Nebraska, and desired the bicycles purchased, for sale in their trade, all of which was known to the company. An agreement was made by the parties by which the plaintiffs in error were constituted the sole agents of the company for the sale of its bicycles at York, and the discounts to be allowed from listed prices were stated in the agreement.

Of the stated elements of damages which, by the trial court's rulings on the motions and the offers of evidence, were eliminated from the case was that of $15 express charges. That the plaintiffs in error were obliged to pay express charges in and about the sales of the wheels or in obtaining the "repairs" for them would not arise as a natural consequence of the breach of the warranty, nor do we think it may reasonably be said to have been contemplated by the parties as a probable outcome of the breach; hence the court did not err in its rulings as to

this portion of the answer and the evidence offered on the same subject-matter. That the plaintiffs in error would probably repair the bicycles sold to their customers, if defective, we think was a natural result and to be expected as to any parts covered by the warranty and fairly within the contemplation of the parties at the time of entering into the contract; hence the court erred in striking the allegations in regard to this claimed element of damages from the answer, and in excluding the evidence offered relative to it.

A portion of the answer referred to loss of profits on "wheels" which had been purchased of plaintiffs in error and returned by purchasers because defective. This was a proper element of damages, having its origin in the breach of the warranty and must have been in contemplation of the parties when the contract was made, as a probable consequence of its breach. The court should not have stricken out the portion of the answer in which this claim of damages was made, or excluded the offered evidential facts of this claim of damages. Both this and the claim in relation to repairs were certain in their nature, or could be rendered reasonably so by evidence, and were also certain in respect to what caused them; hence were proper elements of damages.

Relative to the ground of each of the motions to strike out parts of the answer for the reason that issues were thereby raised not litigated in the county court, it appears that since the case was filed in this court an addition to the transcript has been supplied which contains the pleadings filed in the county court, from which it is evident that no new issues were presented by the answer in the district court; consequently this ground of each motion was of no avail.

It is assigned that the trial court erred in admitting in evidence portions of a catalogue issued by the company, and which contained the price-list of the bicycles sold by the company. Attached to the agreement, by which plaintiffs in error became the agents for sale of the com-

pany's wares at York, Nebraska, was what was designated
a "discount sheet," in which was stated the per cent, pre-
sumably of the list prices of wheels and parts thereof,
to be deducted in all sales to plaintiffs in error.   In this
sheet appeared the following:

"Agents' Confidential Discount Sheet for 1893.

"Keep this for your own reference only.

"The Redhead, Norton, Lathrop Company,

"Des Moines, Iowa.

"Bicycles and Cycling Sundries.

"Terms: Bicycles and sundries, 30 days net, 2 per cent
cash discount in 10 days.   Repairs, net cash on delivery
of work.

"Pacemakers, pages 7-10.

"These machines are sold at a discount to agents, they
having the exclusive sale of them in their territory, as
agreed and contracted for by the agency contract.

1 to 3 machines .........................25 per cent

4 to 10 machines ..................an extra 5 per cent

"Parties selling over three machines during the season
are allowed the extra five per cent rebate October 1st.

"Western Wheel Works goods.   Comprising all ma-
chines listed on pages 16-31 (except Ideal Rambler)."

A witness for the company identified a catalogue as
being one issued by the company and similar to one sent
to the plaintiffs in error prior to their purchases of wheels,
and over the objections of plaintiffs in error the portions
of the catalogue included in pages from seven to ten and
from sixteen to thirty were introduced.   Of the matter
thus brought into the record was the following, which
was made a separate exhibit:

"We warrant our bicycles to be free from imperfections
of workmanship and material, and hereby agree to make
good, at any time within one year after purchase, any de-
fect in them not caused by abuse, misuse, or neglect.   If
such defects be found, the part worn or broken must be
sent to us by prepaid express or mail, for examination be-
fore the claim can be allowed."

In allowing this extract from the catalogue in evidence the court committed an error. If properly identified as the price list of the company and the one by which the company and plaintiffs in error were to and had agreed to be governed in their dealings, then so much of the lists of prices as appeared on pages referred to in the agreement might have been competent and allowable, but not a portion which purported to be a warranty differing from, and in effect rendering nugatory, the one pleaded, introduced and relied upon by the plaintiffs in error. It had in no manner been identified as, or shown to be, the contract of the parties, and the mere fact that it appeared on a page of a catalogue possibly mentioned in an agreement of the parties, which by its broadest fair construction could not be said to indicate more than so much of the pages as were devoted to setting forth prices, did not entitle it to be received in evidence as a part of the matters referred to in the agreement. The allowance of this extract in evidence was probably prejudicial to the rights of plaintiffs in error. If accepted by the jury as the contract between the parties litigant it would have effectually destroyed any significance of the warranty claimed by plaintiffs in error.

There are some other assignments of error but of such a nature as not to need particular notice at this time. For the errors committed as herein indicated the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.