LIZZIE FISCHER ET AL., APPELLEES, V. ALBERT WILHELM ET AL., APPELLEES: HENRY WILHELM, APPELLANT.

298 N. W. 126

FILED MAY 16, 1941.   No. 31042.

*Wagner, Wagner & Albert,* for appellant.

*M. S. McDuffee* and *Moyer & Moyer, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and YEAGER, JJ.

PAINE, J.

Deceased father owned a real estate mortgage, and mortgagor deeded the property to the administrator. Heirs brought partition action, and the district court directed that the amount due from certain heirs to the estate of their father be deducted from their shares of the proceeds of the sale in the partition action. One heir appeals.

Plaintiffs Lizzie Fischer and Lena Hastreiter, who are sisters, filed a petition in Madison county for the partition of real estate, alleging that their father, John Wilhelm, a widower, died testate in Platte county, Nebraska, on July 2, 1936, and at the time of his death owned a first real estate mortgage upon a tract of land of about 190 acres in Madison county, Nebraska.

Exhibit A, attached to said petition, is a copy of the will, dated March 31, 1931, which was duly admitted to probate in Platte county, in which will he gave to his daughters Kate and Rose the residence property in Humphrey, Nebraska, with all of the furniture therein. All the rest of his property was devised equally to his nine children, but the will provided that advancements to three children should be deducted, as follows: That the share of his son Fred was to be charged with $600, without interest, which had been advanced to him, and his son Joseph was to be charged with the sum of $1,450, without interest, and against the share of his daughter Kate the sum of $1,672, without interest, was to be charged, and "then the liens created on their respective shares shall be in favor of my children who have not received advances." It is further provided that, if any of the three children to whom advances had been made should repay any of said amounts, they should have proper credit therefor.

It is set out in said petition for partition that the maker of the note, secured by mortgage on the land in Madison

county, defaulted in his payments, and finally deeded this property to the administrator of the father's estate, upon the surrender of his note and mortgage. In addition to the indebtedness of each of the three children to their father as mentioned in his will, it is alleged that a son, Henry, was also indebted to his father in the sum of $1,350, with interest, and a daughter, Clara Labenz, was indebted to her father on two promissory notes in the total sum of $2,000.

It was alleged that an order had been entered in the county court for Platte county barring all claims against the estate; that all claims against said estate have been paid, except $170 due Rose Wilhelm, a daughter, and $170 due Victor Duesman; that the unpaid costs of the administration are $300; that the other personal property belonging to said estate amounts to more than $2,000, and is sufficient to pay all the unpaid claims and the costs of administration, and therefore the plaintiffs in said petition allege that the administrator of the estate of their father has no interest in the land taken on the mortgage, and is not entitled to the possession thereof.

The plaintiffs allege that the title to the said land taken in on the mortgages belongs in equal shares to the nine children of John Wilhelm, but that five of the one-ninth interests therein are each subject to the debts and advancements as hereinbefore set out, and plaintiffs pray that the court confirm the shares of each of the nine heirs, and ascertain the indebtedness due from each of five of said heirs, and set off the same against their respective shares in the property, and, if the property cannot be equitably partitioned, that the premises be sold and the proceeds distributed according to the respective rights of the several parties therein.

An answer was filed by Henry Wilhelm, admitting the allegations in six of the paragraphs of plaintiffs' petition, but alleging that the debt of $1,350, with interest, alleged to be due his father in paragraph 7 of the said petition was not a debt, but was a gift by his father to him, and defend-

ant alleges that he is not indebted to the estate for any amount whatsoever; further alleges that the cause of action on said alleged debt, if a debt, accrued prior to June 1, 1920, and more than 16 years prior to the death of John Wilhelm, deceased, and is barred by the statute of limitations, as found in sections 20-201, 20-205, 20-206, 20-212, and 20-215, Comp. St. 1929.

The defendant further alleges that he is now, and has been since March 15, 1918, a resident of the state of Colorado, and that the cause of action for the alleged debt is barred by the statute of limitations of the state of Colorado, as follows:

"6392. * * * The following actions shall be commenced within six years, next after the cause of actions shall accrue, and not afterwards: First—All actions of debt founded upon any contract or liability in action."

"6407. * * * When a cause of action has heretofore arisen, or hereafter arises in another state or territory or in a foreign country, and by the laws thereof an action thereon cannot be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this state."

"6408. * * * It shall be lawful for any person against whom an action shall be commenced in any court of this state, wherein the cause of action accrued without this state, upon a contract or agreement expressed or implied, or upon a sealed instrument in writing, or upon a judgment or decree rendered in any court without this state, more than six years before the commencement of the action in this state, to plead the same in bar of the action in this state."

The defendant therefore prays that his share of the real estate described in plaintiffs' petition be quieted and confirmed in him, free of the alleged debt, and that, if said real estate be sold, the distribution of the proceeds thereof be deferred until a final determination of his appeal from the order of the county judge of Platte county, listing against him the alleged debt due to the estate of his father.

After trial, the district court for Madison county on June 6, 1939, entered a decree in partition, finding the nine heirs are each the owners of an undivided one-ninth part of said real estate, and that the one-ninth interest in the real estate belonging to four of the heirs, to wit, Fred, Joseph, Kate and Clara, is each subject to the indebtedness due to the father's estate, as hereinbefore set out, each of said four heirs having defaulted and filed no answer in this partition suit.

As to the defendant Henry Wilhelm, the only defendant filing an answer in said suit, the court finds that he is the owner in fee simple of an undivided one-ninth part in said real estate, subject to later determination as to whether his share is to be charged with the indebtedness, or any part thereof, alleged to be due to the estate of his father.

It was therefore decreed by the court that each of the parties owned an undivided one-ninth interest in said real estate, and that the referee, George H. Moyer, partition the property into the requisite number of shares.

On March 25, 1940, a decree of distribution was entered, setting out that the referee had sold the property for the sum of $4,750, and that four of the heirs, to wit, Lizzie, Lena, Albert and Rose, should each receive a one-fourth part of the net proceeds of said sale, and that the indebtedness of the other five heirs, to wit, Fred, Joseph, Kate, Henry, and Clara, being charged against their share of said real estate, they received nothing out of the distribution of the proceeds.

The court found that Henry Wilhelm was indebted to the estate of his father in the sum of $1,350, which with interest thereon now amounts to $2,771.50, to which Henry Wilhelm duly excepts, and gives notice of appeal.

The defendant relies for reversal upon the ground that the findings of the court are not sustained by the evidence, and are based upon incompetent testimony, being the testimony of Rose Wilhelm relating to conversations and transactions had with her father, and that the decree is contrary to law.

The objection to the testimony of Rose Wilhelm is founded upon section 20-1202, Comp. St. 1929, which provides: "No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness." This section of our statutes is discussed at length in an article in 12 Neb. Law Bulletin, 282. It is said that the determination of the meaning of the words "direct legal interest" presents difficulties in the way of the application of the statute. These cases usually arise in actions where the financial interest of the witness is adverse to the interest of that of the representative of the estate, but in the partition case at bar the two plaintiffs and seven of the defendants are each and all children of the deceased, and the administrator is named as a party defendant in this litigation, and filed an answer and cross-petition. The question at once arises, does the statute apply under such conditions?

It was said in an opinion written by Commissioner Albert that the word "representative" as used in this statute was intended to designate any person who succeeds to the rights of the deceased, whether by purchase, descent, or operation of law. *Brown v. Forbes,* 1 Neb. (Unof.) 888, 96 N. W. 52. See, also, *Wamsley v. Crook,* 3 Neb. 344; *Kroh v. Heins,* 48 Neb. 691, 67 N. W. 771; *Holladay v. Rich,* 93 Neb. 491, 140 N. W. 794.

To clarify this matter, a case where the testimony should have been admitted may well be examined. It is the case of *Oft v. Ohrt,* 128 Neb. 848, 260 N. W. 571, where the testimony of two sisters of the appellant had been rejected by the trial court on the ground that they had an interest in the result of the proceedings. However, it developed that their interests were based upon entirely separate deeds to the one in controversy. The decree was reversed on the ground that the two sisters did not have a legal interest within the meaning of section 20-1202, Comp. St. 1929. This was true, as the success of the plaintiff would not

affect them directly, as they were only interested in the same questions of law involved. Being competent witnesses, the trial court should have received their evidence.

In the case at bar, all nine heirs are parties to this partition action, and each one has a direct legal interest in the result, and all of them are representatives in a sense of their deceased father. See *Broeker v. Day,* 124 Neb. 316, 246 N. W. 490. Rose Wilhelm will increase her share if her testimony reduces the amount her brother Henry receives.

In the opinion of the court, the testimony of. the witness Rose Wilhelm was incompetent, and the objection to her evidence should have been sustained.

This determination takes out of the bill of exceptions all of the testimony of Rose Wilhelm to the effect that her father stated to her that she should keep the three checks and the two letters of Henry, as he did not have a promissory note of his son Henry, and that those three checks would be evidence of the debt that Henry owed him, and she could testify to such facts in settling his estate.

Now, as to the evidence remaining in the case, we have photostatic copies of the three checks, amounting to $1,350, signed by the father and cashed by defendant Henry Wilhelm in Colorado, together with photostatic copies of two letters, in one of which it is claimed that Henry asked his father for money, and in the other he agreed to repay it, all of which were received in evidence without objection, as was a copy of the last will of the father, John Wilhelm.

The only evidence offered on behalf of defendant Henry Wilhelm was exhibit No. 7, a certified copy by the secretary of state of Colorado, under seal, of sections 6392, 6407, and 6408, Laws of Colorado 1921, as set out hereinabove, which was received without objection, whereupon all parties rested.

The answer of Henry Wilhelm alleged that this debt was barred by the Nebraska statute of limitations, as set out in the several sections above cited, and was also barred by the statute of limitations of the state of Colorado.

The evidence shows that the last check was dated March 3, 1920, and the petition in partition was filed on February 15, 1939.

In this case, at the time of the death of the father he owned notes and mortgage, which were personal property in the hands of the administrator with will annexed. While the mortgagor gave the administrator a deed to the mortgaged property, it will still be considered, for the purpose of distribution to the heirs, as personal property. At its sale under partition proceedings, the proceeds of $4,750 belonged to the estate, to be distributed according to the will.

The trial court found that the debt represented by the three checks, amounting to $1,350 with interest, had never been paid. The only defense is the statute of limitations.

The personal estate passes to the administrator, and while it is in the possession of such administrator, he may retain a sufficient amount of a devisee's share in the personal property to satisfy his claim against him. It is this situation that gives rise to the use of the term "retainer," which is defined as the right to have the debt of the legatee or distributee charged to him in the adjustment of the legacy or the distributive share. This right to retainer rests upon the broad principles of equity. *Oxsheer v. Nave*, 90 Tex. 568, 40 S. W. 7, 37 L. R. A. 98; *Stanton v. Stanton*, 134 Neb. 660, 279 N. W. 336.

The right of retainer is more correctly applied in such a case than the term "set-off," which exists only when the obligations of both parties are debts, but in these cases the interest of an heir in his ancestor's estate is not technically a debt due him from the estate, and so the term "retainer" is more accurate.

"The right to retain the debt of an heir from his distributive share is not affected by the lapse of time, and the deduction of the debt should be made although an action to recover the same would be barred by the statute of limitation. *Wilson v. Channell*, 102 Kan. 793, 175 Pac. 95, 1 A. L. R. 987, and cases cited in note page 1007. The same

rule prevails in Iowa where the note was made. *Woods v. Knotts,* 196 Ia. 544, 194 N. W. 953, 30 A. L. R. 768." *In re Sheley's Estate,* 35 N. M. 358, 298 Pac. 942. See, also, *Baca v. Chavez,* 32 N. M. 210, 252 Pac. 987.

Statutes of limitation are enacted on the presumption that one having a well-founded claim will not delay enforcing it, and they neither create nor destroy rights, but pertain to the remedy solely. *In re Hogan,* 75 Ind. App. 53, 129 N. E. 633.

The Indiana court said: "The doctrine is correctly and firmly settled in this state that a distributee is not entitled to receive his distributive share while he is indebted to the estate, and thereby retains in his own hands a part of the fund out of which his own and the shares of other distributees, or other claims on such fund, ought to be paid." *Holmes v. McPheeters,* 149 Ind. 587, 49 N. E. 452.

The New Mexico court held: "That a claim against an heir is barred by the statute of limitation should not prevent the application of the doctrine of retainer * * *; such statute barring the right of action, and not the debt itself." *In re Sheley's Estate,* 35 N. M. 358, 298 Pac. 942.

"In proceedings for partition of property of mother's estate, indebtedness of son to estate should be considered as an asset of the estate, and set apart to son as part of his distributive share, even though the effect of such allotment would be to diminish or eliminate acreage in land set apart to him." *Young v. Hollingsworth,* 16 S. W. (2d) (Tex. Civ. App.) 844.

The Nebraska case of *First Trust Co. v. Cornell,* 114 Neb. 126, 206 N. W. 749, is in point. When Dr. B. L. Paine died, March 13, 1921, his will gave to Herman L. Cornell a legacy of $2,000. The will was admitted to probate on April 11, 1921, and on April 30, 1921, Cornell assigned his legacy of $2,000, while he was indebted to the testator on notes in the sum of $15,000, which had not matured on the date of his assignment of his legacy, and the assignment was immediately filed in the probate proceedings in Dr. Paine's estate. The district court held that the assignment

of this legacy was good, but the decision on appeal to this court was reversed, and this court held: " 'Where a distributee is indebted to the estate, it is the duty of the executor to retain from his share the amount of such indebtedness.' * * * 'And it is against conscience that he should receive anything out of such funds without deducting therefrom the amount of the funds which is already in his hands as a debtor to the estate.' "

The fact that this particular part of the estate, amounting to $4,750, was distributed by the district court for Madison county would not change the rules relating to the distribution of any estate. The administrator with will annexed was a party to these proceedings, and the only question was the proper distribution of this money between the heirs.

The decree of distribution of March 25, 1940, in reference to Henry Wilhelm, reads: "The court further finds that the defendant Henry Wilhelm is indebted to the estate of John Wilhelm in the sum of $1,350 with interest thereon at 5% per annum from April 1, 1920, making a total of $2,771.50 which greatly exceeds his distributive share in the proceeds of the sale of this real property, and none of said proceeds shall be distributed to him. * * * Henry Wilhelm excepts. Supersedeas bond fixed in the sum of $500 conditioned that Henry Wilhelm will prosecute his appeal without delay, and pay all damages and costs assessed against him. Referee shall retain, pending appeal of Henry Wilhelm, or until time for appeal has lapsed, $699.19."

In the opinion of this court, this finding and order in regard to the share of Henry Wilhelm is proper, and the same is hereby

AFFIRMED.